UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ZORA PAIGE BARTHLOW,

          Plaintiff,

vs.                                                   Case No. 3:06-cv-1056-J-33MCR

JAMES B. JETT, in his individual capacity,

          Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Jett's Dispositive Motion for Summary Judgment on the Issue of Qualified Immunity (Doc. #18), filed on September 4, 2007. Barthlow filed her Response (Doc. #29) on November 16, 2007. With leave of the Court, Jett filed a Reply on December 7, 2007. (Doc. #36.) For the reasons stated below, the motion is granted.

**I.    BACKGROUND**

James B. Jett is the Clerk of Courts for Clay County, Florida. Zora Paige Barthlow was an employee of the Clay County Clerk of Court's Office for approximately thirteen years. She worked as an Assistant Director for the Criminal Law Department for many years, and then moved to a clerk position within the Recording Department in April 2003. Barthlow's time with the Clerk's Office was not completely free of controversy. Over the course of her employment, Barthlow received several reprimands and citations in her personnel file for her unprofessional behavior and job errors. One of the earliest recorded incidents occurred on January 2, 2002, when Barthlow was cited for rude and unprofessional behavior towards a citizen who called the Clerk's Office. (Doc. #21 at 6.) Barthlow was also reprimanded on October 15, 2002, for failing to send a memorandum requesting

the release of a defendant from incarceration; as a result of Barthlow's error, the defendant spent an extra day in the city jail. (Id. at 5.) In early 2003, a circuit judge complained of Barthlow's unprofessional conduct in the courtroom. (Id. at 7.) The circuit judge stated that Barthlow "had at times become loud and agitated which, on at least one occasion, resulted in a defendant being released from custody when the court had remanded incarceration." (Id.) The circuit judge recommended that Barthlow be immediately reassigned and removed from further court appearances, after which Barthlow was reassigned. (Id.)

Barthlow's behavioral issues extended beyond her interactions with citizens and her ability to perform her job. Barthlow also had difficulties with other employees in the Clerk's Office. T. Robert King, Assistant Director of Child Support, complained to Jett of Barthlow's alleged abusive and harassing behavior towards him in March 2003. (Id. at 8.) King stated that he had a conversation with Barthlow regarding supervisory job assignments, and Barthlow became hostile and made several abusive comments towards him. After this incident with King, Jett and several supervisors met with Barthlow to discuss the matter, and Barthlow offered to apologize for her behavior at that time. (Id. at 9.)

However, a little over a month later, on April 21, 2003, Barthlow was reprimanded by Jett once again for her rude and unprofessional conduct towards an employee of the State Attorney's Office. (Id. at 11.) The incident began when Barthlow returned a case file to the State Attorney's Office with a note stating that a case number needed to be attached to the file. (Id.) When the employee approached Barthlow to inquire about the note, Barthlow was rude and demeaning , even raising her voice and shaking her finger at the employee. (Id.) During a meeting with Barthlow to discuss the incident, Barthlow was unapologetic and insisted that she did not consider her conduct

to be unprofessional.  (Id.)  Jett informed Barthlow that her unprofessional behavior would no longer be tolerated.  Thus, Jett removed Barthlow as an assistant director and her pay was reduced by five-percent.  (Id. at 12.)  Barthlow was also placed on a six-month probation period and was required to transfer to a vacant position within the Clerk's Office in order to avoid having her employment terminated.  (Id.)  Because there were no available positions that did not require court appearances, Jett created a lateral position for Barthlow in the Recording Department so she could remain employed at the Clerk's Office.  (Id. at 13.)  Barthlow completed her probationary period without incident and her pay was readjusted, back to the level of pay she enjoyed before her probation period. (Doc. #29 Ex. A.)

Despite completing her probationary period without incident, Barthlow soon resumed her pattern of poor job performance and behavioral issues.  On July 20, 2004, Barthlow was cited for having advertised a tax certificate for a tax deed sale on the wrong date. (Doc. #21 at 16.)  Barthlow was cited again on August 9, 2004 for her attitude and lack of flexibility after a confrontation with one of her coworkers.  (Id. at 17-20.) The incident, which occurred on August 5, 2004, concerned Barthlow behaving unprofessionally towards a citizen requesting a copy of a marriage license. Barthlow was also rude to a coworker, after which she complained to her supervisors that she did not receive enough assistance from her coworkers.  Barthlow's supervisor, Carol Ann Prevatt, stated in her evaluation, on August 9, 2004, that:

> [Barthlow's] attitude comes across as being overbearing and non-flexible. Her harsh tone of voice affects the work environment in the department.  She comes across as if [] everything is supposed to go her way and she doesn't adjust well to a heavy work flow or reassignment of tasks. . . . [Barthlow] seems to blame others when problems occur rather than accepting responsibility of the problems herself.

(Id. at 18.)  Prevatt recommended that Barthlow work on adjusting her attitude towards her coworkers and be more flexible.  (Id.)

On the same day of this latest incident, Barthlow wrote a letter to the Florida Elections Commission, reporting Jett for alleged campaign violations.  (Doc. #29 Ex. B.)  Upon the recommendation of an Elections Commission investigator, Barthlow filed a complaint with the Office of the State Attorney of the Fourth Judicial Circuit, alleging criminal misdemeanor charges against Jett.  (Id. Ex. C.)  On August 13, 2004, Jett received notice from the Elections Commission that a complaint had been filed against him.  (Id. Ex. D.)  Thereafter, the State Attorney's Office determined there was no probable cause, and the matter was not pursued.  (Id. Ex. H.)

During this time, however, Barthlow's unprofessional conduct continued.  On October 11, 2004, Barthlow was once again cited for her hostile behavior towards her coworkers.  Barthlow lashed out at a coworker who had offered Barthlow assistance with her job duties; Barthlow also threatened to file harassment charges against that coworker.[1]  (Doc. #21 at 24.)  A meeting was held concerning this incident, which was attended by Barthlow, Prevatt, and Doris Stotler, the Chief Deputy Clerk.  Barthlow was advised to conduct herself in a professional manner towards her coworkers and to contact her supervisor if she perceived any problems.  (Id. at 25.)  Stotler also encouraged Barthlow to speak to Human Resources to discuss confidentially any problems she may have had with any other employees in the office.  (Id.)

Thereafter, on December 20, 2004, Jett notified Barthlow that, in the best interests of the Clerk's Office, she would not be reappointed as a deputy clerk when Jett assumed his new term of

---

[1] This was not Barthlow's first complaint against a coworker.  In August 2004, Barthlow also made an allegation of sexual harassment against Robert King; after a meeting with Barthlow and her supervisors, Barthlow retracted the allegations.  (Doc. #21 at 26.)

office on January 4, 2005; Barthlow was placed on administrative leave for the remainder of Jett's existing term. (Doc. #29 Ex. L.) Her last day of employment was on January 4, 2005. (Doc. # 1 ¶ 14.) Barthlow filed this action on December 1, 2006, bringing suit under 42 U.S.C. § 1983 for violation of her First Amendment rights to free speech. Barthlow alleges the reason for her firing was her formal complaint with the Florida Elections Commission against Jett. (Id. ¶¶ 17-18.) After Jett was notified of Barthlow's complaint,[2] Barthlow alleges that in retaliation Jett reassigned her job duties, wrote her up for disciplinary infractions, and ultimately terminated her employment. (Id. ¶ 12.) She claims that she "exercised her right to free speech in addressing a matter of public concern," and that Jett retaliated by altering the terms of Barthlow's employment and ultimately firing her. (Id. ¶¶ 16-17.) Jett thereafter filed a Motion for Summary Judgment, arguing that he enjoys qualified immunity from Barthlow's claims and that he had lawful reasons for terminating her employment. (Doc. #18.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun

---

[2] Jett made a public records request to the State Attorney's office on October 7, 2004, requesting all documents relating to the complaint filed against Jett. (Doc. #29 Ex. I.)

Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples *ex rel.* Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

**III.   ANALYSIS**

Jett claims that he is entitled to qualified immunity from Barthlow's § 1983 claim.[3]  The defense of qualified immunity shields government employees from litigation where the government employee was acting within his discretionary authority.  Boyce v. Andrew, 510 F.3d 1333, 1341 (11th Cir. 2007).  "In analyzing the affirmative defense of qualified immunity, [the Court uses] a two-part inquiry: (1) do the alleged facts show that the government actor violated a constitutional right? and (2) was that constitutional right clearly established?."  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "[T]he threshold inquiry for deciding if qualified immunity is appropriate is determining under First Amendment, government-speech law whether there has been a constitutional violation by the government employer."  Id.  In order to sustain a claim for retaliation for protected speech under the First Amendment, an employee must show that:

> (1) the employee's speech is on a matter of public concern; (2) the employee's first amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech in order to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. If the employee succeeds in showing the preceding factors, the employer must prove by a preponderance of the evidence that (4) "it would have reached the same decision . . . even in the absence of the protected conduct."

Stanley v. City of Dalton, 219 F.3d 1280, 1288 (11th Cir. 2000) (citing Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989) (the Bryson test)).

---

[3]  Jett argues in his motion that his actions did not constitute state action because a clerk of court is a constitutional officer and the appointment of deputy clerks is discretionary.  See  Fla. Const. art. VIII, § 1(d); § 28.06, Fla. Stat. (2007).  Since he is not required to appoint deputy clerks, Jett argues he was not acting under color of state law.  The Court finds this argument to be without merit.  Similarly situated constitutional officers are considered state actors for the purposes of § 1983 actions for retaliation in violation of the First Amendment.  See e.g., Rogers v. Miller, 57 F.3d 986 (11th Cir. 1995) (considering Brevard County Sheriff's Office as state employer for purposes of personnel decisions under § 1983 action for retaliation).

### A.     "But For" Test

In this case, the most significant factor of the <u>Bryson</u> test is the fourth prong. Even if a plaintiff can show that the speech was protected by the First Amendment and presents a factual issue on the third prong of the <u>Bryson</u> test, a defendant may still obtain summary judgment "by showing that he would have taken the same action in the absence of the speech." <u>Stanley</u>, 219 F.3d at 1292. This is an affirmative defense which requires the government employer to show it had a legitimate reason for terminating the employee. <u>Id.</u> at 1292-93 (citing to <u>Mt. Healthy City Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977)). "To fulfill this burden, a government employer must show that the legitimate reason would have motivated it to make the same employment decision." <u>Id.</u> at 1293. Even if the employer partially relied on the protected speech in taking the adverse employment action, there is no liability if the employer can present sufficient evidence that the same decision would have been made absent the protected speech. <u>Id.</u>

Barthlow's personnel file reveals an extensive history of reprimands for unprofessional conduct. In fact, the most recent incidents, in which Barthlow was cited for her unprofessional conduct towards her coworkers and customers, occurred in August and October 2004. Barthlow was repeatedly advised to improve her attitude, but from the evidence laid before the Court, it appears she did not do so. Barthlow's file contains her rebuttal statements to these incidents, but in no case does Barthlow dispute an incident's occurrence. Instead, Barthlow asserts a variety of excuses for her behavior. For example, in reference to the incident regarding the incorrectly advertised tax certificate, Barthlow stated that she was "swamped" as well as "interrupted numerous times by the phone and with customers coming into the office" that day, and that the computer system was very complicated in regards to preparing tax deeds. (Doc. #21 at 35-36.) Jett has presented strong

evidence to the Court of Barthlow's negative employment history and his legitimate reasons for terminating her employment. The Court finds that Jett has presented sufficient and unrebutted evidence to show that there is no genuine question that he would have fired Barthlow whether or not she made her complaint. Consequently, summary judgment is warranted.

### B. Mixed Motives

However, even if there was the presence of a jury issue on Jett's intent, summary judgment on qualified immunity is not precluded. If a defendant's employment decisions were motivated in part by lawful considerations, then the case is one of mixed motives and qualified immunity must apply. Stanley, 219 F.3d at 1296. In Foy v. Holston, the Eleventh Circuit determined that even where there is discriminatory intent, if there were also lawful motivations, qualified immunity applies. 94 F.3d 1528, 1534 (11th Cir. 1996). "That state officials can act lawfully even when motivated by a dislike or hostility to certain protected behavior by a citizen is well established." Id. at 1534 (citing Mt. Healthy, 429 U.S. at 286-87). As stated by the Eleventh Circuit:

> One trigger to the [] application [of qualified immunity] depends upon whether the record establishes that the defendant, in fact, did possess a substantial lawful motive for acting as he did act. At least when an adequate lawful motive is present, that a discriminatory motive might also exist does not sweep qualified immunity from the field even at the summary judgment stage. Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct--despite his having adequate lawful reasons to support the act--was the result of his unlawful motive, the defendant is entitled to immunity. Where the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful and unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity.

Id. at 1534-35. Under this rationale, where "the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations," the defendant is entitled to qualified immunity. Stanley, 219 F.3d at 1296.

The record before the Court clearly establishes lawful motivations for terminating Barthlow's employment. Barthlow has not cited to, nor can the Court discover, any law that would prevent a similarly situated clerk of court from making the same employment decision based upon Barthlow's employment history. Jett had lawful reasons to terminate Barthlow, regardless of her protected speech. Even if Barthlow's protected speech motivated Jett's action in part, the record establishes that this case is at least one of mixed motives, and therefore Jett is entitled to qualified immunity.

### C. First Amendment Protected Speech

Even having determined that Jett is entitled to qualified immunity, the Court will address the other three prongs of the Bryson test. The first two factors of the Bryson test focus on whether the employee's speech is protected by the First Amendment. In the context of retaliation against a government employee, the government employee must be speaking as a private citizen on an issue of public concern. Boyce, 510 F.3d at 1342 (citing Garcetti v. Ceballos, 547 U.S. 410 (2006)). If the government employee was speaking as an employee pursuant to his official duties, then there is no First Amendment protection for the speech. Id. at 1343.

In Boyce, two caseworkers employed by the Dekalb County Department of Family and Children Services brought § 1983 claims of retaliation after they were terminated and transferred, respectively. Id. at 1336. The caseworkers alleged that they were retaliated against for speaking out to their supervisors about the size of their caseloads. Id. at 1337. The caseworkers complained by emailing their supervisors and union representatives, stating that they were overworked and

unable to handle all the cases assigned to them. Id. at 1343. In analyzing whether the caseworkers were speaking as employees or as private citizens, the Eleventh Circuit determined that the complaints were intended to address personal grievances connected to the caseworkers' jobs, not matters of public concern. Id. at 1344-45. Crucial to this finding was that the complaints were not addressed to any outside entities, nor did they concern any matters beyond the caseworkers' personal working conditions. Id. at 1344.

In this case, Barthlow's speech was only directed to outside entities. Her complaints were addressed to the Florida Elections Commission and the State Attorney's Office. (Doc. #29, Exs. B, C.) Her speech did not concern her personal working conditions, but addressed purported election law violations by Jett. Barthlow alleged that Jett was soliciting campaign donations from his employees during work hours. (Doc. #29 Ex. B.) Barthlow's duties in the Recording Department involved maintaining the daily cashier receipts, recording county ordinances, and overseeing lien transfers to security. (Doc. #21 at 14.) Barthlow's speech not only fell outside of her enumerated duties, but Jett's alleged election violations do not come within the scope of Barthlow's working conditions. But cf. Phillips v. City of Dawsonville, 499 F.3d 1239 (11th Cir. 2007) (finding city clerk's speech concerning mayor's misuse of city property fell within the scope of her official duties).

In Phillips, a city clerk reported her concerns regarding what she considered to be the Mayor's improper conduct to several city employees, including the city attorney and city council members. Id. at 1240. After the clerk was not reappointed to her position, she sued the city for retaliation in violation of her First Amendment rights. Id. at 1241. The Eleventh Circuit determined that the clerk's speech was not protected by the First Amendment because it fell within the scope

of her official duties. Id. at 1243. In reaching this conclusion, the Eleventh Circuit found that the clerk's official duties included responsibility for the collecting and accounting of all city funds, and she was also responsible for reporting the city's financial condition to the Mayor and the City Council. Id. at 1242. The clerk's allegations touched on the misuse of city property, and "[a]lthough her enumerated duties did not specify reporting misconduct by the Mayor, it was within her official duties to inquire about and make statements on the potentially inappropriate use of the City's resources." Id. However, in this case, Barthlow's duties as a recording clerk do not encompass a responsibility for Jett's conduct as a candidate for public office, nor any oversight for Jett's use of his elected office. As stated above, allegations of Jett's misconduct in regards to election laws do not touch upon any of Barthlow's duties, enumerated or not, as a recording clerk. Since her speech fell outside of the scope of her official duties, Barthlow was speaking as a private citizen.

Furthermore, an employee's speech is an issue of public concern if the speech is "relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). The public has an interest in ensuring the integrity of the political process. See Sadowski v. Shevin, 345 So. 2d 330, 332 (Fla. 1977). The Court finds that allegations of a public official's misuse of his public office and willful violation of election laws are a matter of public concern. Cf. Stanley v. City of Dalton, 219 F.3d 1280 (11th Cir. 2000) (finding deputy's cooperation with investigation into theft of money from evidence room to be a matter of public concern). Therefore, Barthlow was speaking as a private citizen on a matter of public concern, and her speech is protected by the First Amendment.

### D.      Balancing Interests

Jett argues that his interest in maintaining the reputation of the Clerk's Office within the community and ensuring the loyalty and competency of his employees outweighs Barthlow's First Amendment interests.  Once it is determined that an employee's speech is protected by the First Amendment, a court must weigh the employee's interests in free speech against the employer's interests "in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968) (Pickering balancing test).  The court considers "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made."  Morales v. Stierheim, 848 F.2d 1145, 1149 (11th Cir. 1988).  "There is no bright-line standard, and Pickering requires a careful balancing of competing interests on a case-by-case basis." Stanley, 219 F.3d at 1289.  Jett asserts that deputy clerks are his public presence, and he has a compelling interest in ensuring that the deputy clerks behave in a professional and service-oriented manner.

The Clerk's Office does have an interest in preventing disruptive speech, such as unfounded allegations against the Clerk or his supervisors.  Cf. id. at 1290 (finding police department had an interest in preventing officers' unfounded accusations against superiors).  However, Jett has presented no evidence suggesting that Barthlow's speech on the alleged election law violations disrupted the Clerk's Office.  In fact, the evidence shows that Barthlow only made these allegations to the Florida Elections Commission and the State Attorney's Office, not to anyone within the Clerk's Office.

While it was later determined that there was no probable cause to pursue formal charges on these allegations, Jett has not presented any evidence that would indicate Barthlow made knowingly or recklessly false statements. Cf. id. at 1291 n.18 (knowingly or recklessly false statements are not entitled to First Amendment protection). Jett may have an interest in maintaining harmony within the Clerk's office, but the Court cannot say that it outweighs Barthlow's First Amendment right to speak out on alleged election law violations, at least without some suggestion that the speech disrupted the efficiency and functioning of the Clerk's office. Considering the subject matter and manner of Barthlow's speech, the Court finds that the Pickering balancing test favors Barthlow, and her speech is protected by the First Amendment.

### E.     Substantial Factor in Termination

"The third . . . element[] of the Bryson test [is a] question[] of fact designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision." Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1564 (11th Cir. 1995). Once it is established that plaintiff engaged in protected speech, the inquiry turns to whether that protected speech was a substantial motivating factor in the employment decision. Stanley, 219 F.3d at 1288. "[T]he plaintiff's burden in this regard is not a heavy one." Id. at 1291. The Court must review the entire record to determine if there is sufficient evidence presented to show that protected speech was a substantial factor in the decision to terminate the employee. Id. Temporal proximity may be enough to create an issue of fact. "Where termination closely follows protected activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 745 (11th Cir. 1996). In this case, Barthlow was placed on administrative leave and notified of Jett's intentions not to renew her appointment on December

20, 2004, a little more than four months after Barthlow's complaint to the Florida Elections Commission and only two months after Jett made a public records request of the investigation file. Jett has not presented any evidence to contradict Barthlow's assertion that the protected speech was a motivating factor in his decision to terminate her employment. Furthermore, any conflicts in allegations or evidence must be resolved in favor of the non-moving party. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). For these reasons, the Court finds that Jett has not met his initial burden of showing absence of a genuine question of whether Barthlow's protected speech was a substantial motivating factor in the decision not to renew her appointment.

However, as stated above, despite Barthlow's speech being protected by the First Amendment and her ability to show an issue of fact in regards to Jett's intent, Jett is still entitled to summary judgment. Jett presented sufficient and unrebutted evidence to show that there is no genuine question that he would have fired Barthlow whether or not she made her complaint about Jett's alleged election law violations. Barthlow's personnel file is extensive and replete with instances of her unprofessional behavior and poor job performance. Even if Jett was partially motivated by Barthlow's protected speech, the record establishes that Jett had ample lawful motivations to not reappoint Barthlow as a deputy clerk. Therefore, Jett is entitled to qualified immunity and summary judgment is granted.

Accordingly, it is now

**ORDERED, ADJUDGED** and **DECREED:**

Jett's Dispositive Motion for Summary Judgment on the Issue of Qualified Immunity (Doc. #18) is **GRANTED**.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 2nd day of May, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record