**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ZORA PAIGE BARTHLOW,

        Plaintiff,

vs.	Case No. 3:06-cv-1056-J-33JRK

JAMES B. JETT, in his individual capacity,

        Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

This cause is before the Court on Defendant's Motion for Award of Attorneys' Fees Pursuant to 42 U.S.C. § 1988 (Doc. No. 43; "Motion"), filed June 24, 2008. The Motion is opposed. See Plaintiff's Response to Defendant's Motion for Attorney Fees and Costs (Doc. No. 47; "Response"), filed July 1, 2008. On June 25, 2008, this matter was referred to the undersigned by the Honorable Virginia M. Hernandez Covington, United States District Judge, for a Report and Recommendation. See Order (Doc. No. 46).

**I.	Background**

On December 1, 2006, Plaintiff Zora Paige Barthlow filed a single-count Complaint (Doc. No. 1; "Complaint") alleging Defendant James Jett, the Clerk of the Circuit Court in and for Clay County, Florida, had violated her rights under 42 U.S.C. § 1983. See Compl. at 1. Plaintiff, who had worked for the Clerk's Office for more than thirteen years, claimed that

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual allegations on appeal.

Defendant violated her First Amendment rights by terminating Plaintiff's employment after Plaintiff reported alleged campaign finance violations by Defendant to the Florida Elections Commission.  See id. at 3-4.  Specifically, Plaintiff averred that campaign contributions for Defendant's 2004 re-election campaign had been solicited from supervisors and assistant supervisors within the Clerk's Office at a meeting conducted by one of Defendant's deputies.[2]  See id. at 2.  Following her initial report to the Florida Elections Commission, Plaintiff filed a formal complaint with the Florida Commission on Ethics.  See id.  An investigation was opened, and Defendant was informed of the nature of the charges.  See id. at 3.  Plaintiff alleged that after Defendant was made aware of the investigation, some of her duties were taken away, she was moved out of her office, and she was "written up" for various infractions.  See id.  Approximately four months after filing her complaint with the Ethics Commission, and following Defendant's successful re-election, Plaintiff was informed by Defendant she would not be reappointed as a deputy clerk.  See id.

On December 21, 2006, Defendant filed a Motion to Dismiss (Doc. No. 5) on the grounds of res judicata.  See Motion to Dismiss at 1.  Defendant's res judicata argument was based on a suit filed by Plaintiff in 2005 in state court, alleging violations of the Florida whistleblower statute.  See id. at 1-2.  Plaintiff's whistleblower suit was dismissed without prejudice for failure to provide written notice of her claim to the appropriate agency and the state Department of Insurance prior to filing suit.  See id. at Exh. B.  Plaintiff appealed the

---

[2] According to Plaintiff, $500 had been requested from each supervisor and $300 from each assistant supervisor in the Clerk's Office.  Plaintiff contributed $50.  See Compl. at 2.

-2-

dismissal, which was affirmed on June 5, 2006.[3]  See Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. No. 9) at 3.  On May 29, 2007, the Court denied Defendant's Motion to Dismiss, holding that Plaintiff's dismissal without prejudice in state court was not an adjudication on the merits, and, furthermore, that Plaintiff's whistleblower claims did not present the same issues as Plaintiff's present claim under 42 U.S.C. § 1983.  See Order of May 29, 2007 (Doc. No. 15) at 4-5.

On September 4, 2007, Defendant filed a Motion for Summary Judgment (Doc. No. 18; "MSJ") on the basis of qualified immunity, arguing that as a state employee acting in his official capacity he was entitled to qualified immunity from Plaintiff's suit. Defendant's qualified immunity defense hinged on his argument that Plaintiff had failed to establish Defendant's conduct violated clearly established law.  MSJ at 10-13.  In support of the argument that he had not violated clearly established law with respect to Plaintiff's speech, Defendant averred that even had Plaintiff not complained about Defendant's campaign conduct, he still would have chosen not to reappoint her as a deputy clerk.  Id. at 9-10. Relying on Plaintiff's employment history with the Clerk's Office, Defendant argued that Plaintiff's numerous disciplinary infractions justified his decision not to reappoint her in the absence of any reference to her reporting of his alleged campaign violations.  Id.  Therefore, Defendant argued, the decision to terminate Plaintiff's employment was motivated by "adequate lawful reasons," and was not solely the result of an unlawful motive.  Id. at 8 (quoting Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996)).

---

[3] Plaintiff did not re-file her suit in state court; instead, she filed the present action in federal court.

In Plaintiff's Response of November 16, 2007 (Doc. No. 29), she argued that her speech reporting Defendant's alleged campaign violations to an investigatory agency clearly constituted speech on a matter of public concern and that therefore, Defendant should have known that terminating her employment on the basis of her protected speech was a violation of Plaintiff's clearly established First Amendment rights. See Response to MSJ at 8-9. Plaintiff also questioned Defendant's alleged non-discriminatory reason for not reappointing her, noting that other deputy clerks, who had provided statements to investigators looking into Plaintiff's charge, were also terminated, and that these deputy clerks did not have a history of infractions. See id. at 10. Plaintiff further contested the validity of the infractions noted in her own file, claiming that a portion of them were fabricated as retaliation for her protected speech. See id. at 9-10.

On May 2, 2008, the Court granted Defendant's Motion for Summary Judgment. See Order (Doc. No. 39). In a sixteen-page opinion analyzing relevant First Amendment and qualified immunity law, the Court held that Defendant had not violated Plaintiff's First Amendment rights under the so-called "Bryson" test and was therefore entitled to qualified immunity.[4] See id. at 7-10 (citing Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th

---

[4] Under the Bryson test, an employee must show the following to establish a claim for retaliation based on First Amendment protected speech:

(1) the employee's speech is on a matter of public concern; (2) the employee's first amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech in order to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. If the employee succeeds in showing the preceding factors, the employer must prove by a preponderance of the evidence that (4) "it would have reached the same decision . . . even in the absence of the protected conduct."

(continued...)

Cir. 1989)). In so doing, the Court rested upon the fourth prong of Bryson, finding that the evidence showed "no genuine question that [Defendant] would have fired [Plaintiff] whether or not she made her complaint," due to her performance issues. Order at 9. Even if a jury question existed on the issue, the Court held, Defendant was entitled to qualified immunity under the "mixed motives" theory of qualified immunity:

> At least when an adequate lawful motive is present, that a discriminatory motive might also exist does not sweep qualified immunity from the field even at the summary judgment stage. Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct–despite his having adequate lawful reasons to support the act–was the result of his unlawful motive, the defendant is entitled to immunity.

Id. (quoting Foy, 94 F.3d at 1534-35).

Notwithstanding its holding on the issue of qualified immunity, the Court also analyzed the case under each of the first three prongs of Bryson, 888 F.2d at 1565-66. First, the Court explicitly found that Plaintiff's speech was made in her capacity as a private citizen, and related to a matter of public concern. See id. at 10-12. Next, the Court analyzed the second Bryson factor by applying the "balancing test" set forth in Pickering v. Board of Education, 391 U.S. 563 (1968), to determine whether Plaintiff's interest in engaging in the speech outweighed the employer's interest in promoting the efficiency of the services it performs. See id. at 13 (citing Pickering, 391 U.S. at 568). Finding that the test favored Plaintiff, the Court acknowledged that Plaintiff's speech was protected by the First Amendment. See Order at 14. Third, the Court examined whether the protected speech

---

[4](...continued)
Stanley v. City of Dalton, 219 F.3d 1280, 1288 (11th Cir. 2000) (citing Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989) (citation omitted)) (ellipsis in original).

was a substantial motivating factor in the employment decision. See id. (citing Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1564 (11th Cir. 1995)). Noting the temporal proximity of Defendant learning of the investigation and placing Plaintiff on administrative leave pending her termination, the Court found a genuine issue of fact as to this factor. See Order at 15. However, given the Court's finding on the fourth Bryson factor, that Defendant had ample reason to terminate Plaintiff without considering her protected speech, Defendant was still found to be entitled to qualified immunity. See id. at 9-10, 15. Following the decision on the summary judgment motion, judgment was entered in favor of Defendant, see Doc. No. 41, and Plaintiff filed a notice of appeal. See Doc. No. 42.

On June 24, 2008, Defendant filed the instant Motion requesting payment of $25,189.00 in attorney's fees, claiming that as the prevailing party in a 42 U.S.C. § 1983 action, he is entitled to recovery of his attorney's fees under 42 U.S.C. § 1988. See Motion at 1. Plaintiff responded on July 1, 2008, arguing that Defendant failed to meet the stringent standard for an award of attorney's fees under § 1988 because he has not shown that Plaintiff's action was frivolous, unreasonable, or without foundation. See Response at 1-2.

**II.   Discussion**

In any action brought under 42 U.S.C. § 1983, the Court is permitted, in its discretion, to award attorney's fees to the prevailing party, with certain exceptions.[5] See 42 U.S.C. § 1988(b). However, such award is only to be made "upon a finding that the action was 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad

---

[5] Section 1988 expressly prohibits recovery of attorney's fees when the United States is the prevailing party, as well as in any successful suit against a judicial officer for an act or omission taken in such officer's judicial capacity. 42 U.S.C. § 1988(b).

-6-

faith.'" Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1558 (11th Cir. 1995) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)).[6]  "[A] plaintiff's claim should not be considered groundless or without foundation . . . when the claims are meritorious enough to receive careful attention and review." Id. at 1559.

Having described the standard as "stringent," Hughes v. Rowe, 449 U.S. 5, 14 (1980), the U.S. Supreme Court has also cautioned district courts as follows:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

Christiansburg, 434 U.S. at 421-22.  Nevertheless, "a litigant's duty to avoid frivolous litigation is a continuing obligation." Boler v. Space Gateway Support Co., 290 F. Supp. 2d 1272, 1279 (M.D. Fla. 2003) (citing Christiansburg, 434 U.S. at 422).  Continuing to advocate a claim "after it is clearly no longer tenable may subject the plaintiff to attorney's fees even though the complaint was not initially frivolous." Id.

The Eleventh Circuit generally evaluates three factors when determining whether a prevailing defendant is entitled to attorney's fees: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Walker, 53 F.3d at 1559.  However, courts "have been reluctant to award fees unless the plaintiff[] refused to

---

[6] Walker involved a claim for attorney's fees in a Title VII case.  However, the Court noted that the U.S. Supreme Court applies the same standard for an award of fees in both Title VII and § 1983 cases. See Walker, 53 F.3d at 1558 n.14 (citing Hughes v. Rowe, 449 U.S. 5, 14 (1980)).

acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest." Boler, 290 F. Supp. 2d at 1280.  Moreover, "[a] defendant is not entitled to an award of attorney's fees and costs simply because it prevailed in summary judgment." Id.

Here, Defendant has failed to meet the "stringent" standard required for an award of attorney's fees under § 1988.  See Hughes, 449 U.S. at 14.  Plaintiff claimed that Defendant violated her First Amendment rights by terminating her employment after she reported alleged campaign violations by Defendant to state investigatory authorities.  There is no evidence that Plaintiff's claims were "frivolous, unreasonable, or without foundation." Walker, 53 F.3d at 1558.  First, Plaintiff's suit survived Defendant's Motion to Dismiss on res judicata grounds.  Additionally, although Plaintiff ultimately lost at the summary judgment stage, it was not for want of a prima facie case.  See Boler, 290 F. Supp. 2d at 1280.  In the opinion of the Court, Plaintiff established that she had engaged in protected, First Amendment speech on a matter of public concern, meeting the first two prongs of the Bryson test set forth by the Eleventh Circuit.  Moreover, Plaintiff raised a jury question as to the third prong of the Bryson test, whether her protected speech was a substantial motivating factor in the decision to terminate her.  Only after considering factual evidence relevant to the fourth prong of Bryson, whether Defendant would have terminated Plaintiff in the absence of the protected speech, did the Court find that Defendant was entitled to qualified immunity.  Although this holding had the effect of terminating Plaintiff's suit, a defendant is "not entitled to . . . attorney's fees and costs simply because it prevailed [on]

summary judgment."[7] Boler, 290 F. Supp. 2d at 1280.

The Court in this case conducted a detailed, fact-specific analysis and carefully applied a number of complex, inter-related balancing tests and standards to determine whether Defendant was entitled to qualified immunity against Plaintiff's claims. Had Plaintiff "refused to acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest," id., such would have been evident in the Court's ultimate decision. Notably, it was not; Plaintiff's First Amendment interest was clearly acknowledged. Requiring Plaintiff to have anticipated that Defendant would successfully defend the suit on grounds of qualified immunity would be the kind of "hindsight logic" that the Supreme Court expressly warned courts to avoid. Christiansburg, 434 U.S. at 422. Moreover, given Plaintiff's successful defense of the Motion to Dismiss, there was not a point in the litigation prior to the summary judgment stage at which Plaintiff's action could have been characterized as no longer tenable. See Boler, 290 F. Supp. 2d at 1279. Upon review of the entire record, the undersigned finds that Plaintiff's claims were worthy of the "careful attention and review" they received. Walker, 53 F.3d at 1559. Therefore, Defendant should not be allowed an award of fees.[8]

---

[7] The Court is cognizant that Defendant's itemization of attorney's fees includes billing entries that appear to reflect an offer of settlement being made, one of the factors identified as relevant in Walker, 53 F.3d at 1559. However, this factor is not controlling in this case, given the other circumstances mitigating against an award of attorney's fees.

[8] Because the undersigned recommends denying the instant Motion, a substantive review of the reasonableness of Defendant's proposed bill for attorney's fees is unnecessary. However, it has not escaped the Court's notice that Defendant's bill for $25,189.00 includes $4,231.50 worth of fees for work performed from January 3, 2006 through October 23, 2006. These charges appear to relate to the defense of Plaintiff's state court action for violations of Florida's whistleblower statute, as well as the appeal thereof. As Plaintiff's federal suit was not filed until December 1, 2006, such fees could not have been incurred as a result of Plaintiff's § 1983
(continued...)

Accordingly, it is

**RECOMMENDED**:

Plaintiff's Motion for Award of Attorneys' Fees Pursuant to 42 U.S.C. § 1988 (Doc. No. 43) be **DENIED**.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on July 24, 2008.

/s/ James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

jcd

Copies to:

Counsel of Record

---

[8](...continued)
action, and no authority has been noted by Defendant for his inclusion of this sum in the Motion.